# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ERIC SIMS,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 4:11-cv-00358-ACA |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

Plaintiff Eric Sims appeals the decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Mr. Sims filed this action on February 2, 2011, seeking review of the Commissioner's denial of his claim for benefits. (Doc. 1). On June 28, 2011, the court granted the Commissioner's unopposed motion to remand the case for further administrative proceedings pursuant to sentence six of 42 U.S.C. § 405(g). (Doc.

8).  On remand, the ALJ issued a second unfavorable decision.  (R. at 506–546).  The Appeals Council remanded that ALJ's decision. (R. 547).  After holding a hearing (*id.* 339–408), the ALJ issued a third unfavorable decision on May 9, 2017 (*id.* at 409–471).

Mr. Sims filed written exceptions with the Appeals Council on June 9, 2017.  (R. at 1075–1143).  On January 14, 2020, the Appeals Council reviewed Mr. Sims' exceptions and found no reason to assume jurisdiction, making the ALJ's May 9, 2017 unfavorable decision the final decision of the Commissioner after remand.  (*Id.* at 472–479).

The court granted Mr. Sims' unopposed motion to reopen the case for review of the Commissioner's final decision on remand.  (Doc. 20).

## II.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not

"decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ found that Mr. Sims has not engaged in substantial gainful activity since April 21, 2006, the alleged onset date. (R. 416). The ALJ found that Mr. Sims' degenerative joint disease, degenerative disc disease, history of fracture of tibia and fibula with fixation, obesity, chronic pain complaints, history of substance abuse including polypharmacy, depression, and anxiety disorder are severe impairments. (*Id.*). But the ALJ found that Mr. Sims' hepatitis C, gastroesophageal reflux disease, allergies, chronic obstructive pulmonary disease, tendinitis of the shoulder, and hypertension are non-severe impairments. (*Id.*). The ALJ then concluded that Mr. Sims does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 417).

After considering the evidence of record, the ALJ determined that Mr. Sims has the residual functional capacity to perform light work with certain postural, environmental, and social limitations. (*Id.* at 420). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that Mr. Sims can perform, including inspector/checker, hand packer, and wire worker. (*Id.* at 455–56). Accordingly, the ALJ determined that Mr. Sims has not been under a disability, as defined in the Social Security Act, from April 21, 2006 through the date of the decision. (R. 456).

## IV. DISCUSSION

Mr. Sims asks the court to reverse the Commissioner's decision because the ALJ did not properly evaluate the opinions of treating physician Dr. Danny Salisbury and examining psychologist Dr. Robert Storjohann. The court considers each argument in turn.

### 1. The ALJ Properly Evaluated Dr. Salisbury's Opinion

Mr. Sims' first argument is that the ALJ did not give proper weight to the opinion of his treating physician, Dr. Salisbury. (Doc. 22 at 22–26).

An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241; alteration in *Winschel*).

In 2008 and 2013, Dr. Salisbury opined that Mr. Sims was disabled and could not hold gainful employment. (R. 297; 1573–74). Whether Mr. Sims is

disabled and can maintain a job is an issue reserved for the Commissioner, and Dr. Salisbury's opinions on that issue are not controlling. *See* 20 C.F.R. § 404.1527(d)(1). Therefore, the ALJ was not required to give those opinions special deference or consideration.

In 2014, Dr. Salisbury competed a physical capacities form in support of Mr. Sims' disability application. (R. 1890). Dr. Salisbury opined that Mr. Sims can sit and stand for one to two hours at a time and can walk for one hour a time. (*Id.*). Dr. Salisbury also opined that in an 8-hour workday, Mr. Sims must lie down, sleep, or sit with his legs propped up at waist level or above for one to hours. (*Id.*).

The ALJ gave partial weight to these opinions. The ALJ "generally agree[d]" with Dr. Salisbury's opinion regarding Mr. Sims' sitting, standing, and walking limitations. (R. 450). And to account for these limitations, the ALJ included in her residual functional capacity determination a change in position after an hour of sitting, standing, or walking. (R. 420). But the ALJ found that Dr. Salisbury's records do not support the severe restrictions regarding Mr. Sims' inability to complete an 8-hour workday because he needs to lie down, sleep, or sit with his legs elevated for one to two hours a day. (R. 450). Specifically, the ALJ noted that these restrictions were inconsistent with Dr. Salisbury's progress notes that show that Mr. Sims had a good response to pain medication without significant side effects. (R. 450). In addition, the ALJ explained that in the several

months before Dr. Salisbury completed the physical capacities form, Mr. Sims' physical examinations "were largely unremarkable" in terms of Mr. Sims' "gait, station, motor functioning, reflexes, and psychiatric status" and Mr. Sims was in no acute distress and did not have neurological defects. (*Id.*) (citing R. 1765–1776).

Good cause existed for discounting Dr. Salisbury's opinion regarding Mr. Sims' ability to complete an 8-hour workday because as the ALJ explained, that opinion is inconsistent with Dr. Salisbury's own records. *See Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence).

Mr. Sims argues that other evidence in the record supports Dr. Salisbury's opinion. (R. at 27–28). But the court cannot "second guess the ALJ about the weight assigned the treating physician's opinion deserves so long as he articulates a special justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Here, the ALJ articulated good cause for giving partial weight to Dr. Salisbury's opinion, and the court will not disturb that finding.

### 2. The ALJ Properly Evaluated Dr. Storjohann's Opinion

Mr. Sims' second argument is that the ALJ failed to give proper weight to the opinion of examining psychologist Dr. Storjohann. (Doc. 22 at 29–34).

The opinion of a one-time examiner like Dr. Storjohann is not entitled to deference. *Crawford*, 363 F.3d at 1160 (the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). In addition, "[t]he ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Dr. Storjohann opined that Mr. Sims has "marked deficits in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." (R. 1433). Dr. Storjohann also assessed a GAF of 48, which is disabling. (*Id.*). The ALJ gave partial weight to this opinion because she found that it "is not generally consistent with the record as a whole." (R. 452). Specifically, the ALJ noted that before and shortly after Mr. Sims' allegedly disabling injury, he worked for his uncle, and Mr. Sims' uncle submitted an affidavit in which he attested that Mr. Sims was one of his best employees; Mr. Sims did excellent work; and Mr. Sims had an excellent attitude. (R. 452) (citing R. 905–06). In addition, the ALJ explained that Mr. Sims has lived alone and—for the most part—functioned

independently. (R. 452). The ALJ also noted that Mr. Sims had maintained good relationships with his mother, young daughter, friends, and girlfriend. (*Id.*).

Mr. Sims does not challenge the ALJ's stated reasons for assigning less weight to Dr. Storjohann's opinion, and contrary to his suggestion (*see* doc. 22 at 29), the ALJ clearly articulated reasons for rejecting Dr. Storjohann's opinion (*see* R. 452).

Mr. Sims appears to argue that in discounting Dr. Storjohann's opinion, the ALJ substituted her opinion for that of Dr. Storjohann. (*See* Doc. 22 at 29–30). Mr. Sims is correct that an ALJ may not substitute her own opinion of a claimant's condition for that of a medical expert. *See Freeman v. Schweiker,* 681 F.2d 727, 731-32 (11th Cir. 1982). Mr. Sims cites a number of cases that stand for this general proposition, but he advances no specific argument regarding how the ALJ did so in this case. (Doc. 22 at 29-30). Moreover, although an ALJ "may not make medical findings herself," the ALJ's responsibility is "to resolve conflicting medical opinions." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (finding that "the ALJ did not usurp the role of a physician" by weighing the credibility of a medical expert's opinion "in light of other record evidence"). Accordingly, the court finds that in assigning partial weight to Dr. Storjohann's opinion, the ALJ did not impermissibly substitute her opinion for that of a medical examiner.

9

Finally, Mr. Sims argues that the court should find that the ALJ improperly evaluated Dr. Storjohann's opinion based on the Seventh Circuit's "degree of suspicion" standard adopted in *Wilder v. Chater*, 64 F. 3d 335 (7th Cir. 1995). (Doc. 22 at 30–33). As an initial matter, the Eleventh Circuit has not adopted this standard for reviewing the opinions of medical examiners. As explained above, in this Circuit, opinions of one-time examiners "are not entitled to deference." *McSwain*, 814 F.2d at 619.

In addition, even if *Wilder* were controlling, *Wilder* is distinguishable from the facts of this case. In *Wilder*, the consulting physician's opinion was the only evidence of the claimant's mental health impairments. *Wilder*, 64 F.3d at 337–38. Here, the record contains various other evidence and opinions about Mr. Sims' mental health. (*See* R. 1447–50, 1819–21, 1918–25, 1950–55, 1960–86, 2198–2212). Accordingly, *Wilder* does not assist Mr. Sims. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019) (explaining that *Wilder* is inapposite where the ALJ does not reject the only medical evidence about a claimant's impairments).

## III.  CONCLUSION

Substantial evidence supports the ALJ's denial of Mr. Sims' applications for a period of disability, disability insurance benefits, supplemental security income. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 6, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE